**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

ROBERT C. EZEANI,

Plaintiff,

vs.

LOEDING and ILLETSCHKO, individually and as police officers of the City of Minneapolis; ROBERT K. OLSON, as Chief of Police of the City of Minneapolis; and, the CITY OF MINNEAPOLIS - employer (with JACKIE CHERRYHOMES, as City President),

Defendants.

Civil No. 99-1292 DDA/FLN

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

ROBERT C. EZEANI, Minneapolis, Minnesota, appeared pro se.

TIMOTHY S. SKARDA, Assistant Minneapolis City Attorney, appeared on behalf of Defendants.

---

This case arises from a custodial arrest of Plaintiff Robert Ezeani ("Ezeani"). Ezeani claims that the Minneapolis police officers who arrested him, Defendants Steven Loeding and Robert Illetschko (collectively "the Officers"), used excessive force during the arrest and otherwise subjected him to unreasonable search and detention, all in violation of 42 U.S.C. § 1983. Ezeani also claims that Defendant City of Minneapolis ("Minneapolis") and two of its officials are liable for these violations. The Defendants have moved for summary judgment on all issues, arguing that the record does not support Ezeani's claims against Minneapolis and its officials and that the Officers individually are entitled to qualified immunity[1]. For the reasons stated in this Order, the Court will grant the Defendants' motion.

---

[1] The Defendants in their brief contend as well that they are entitled to immunity from state common law claims and various other claims arguably supported by the allegations in Ezeani's pro se Complaint. The Complaint particularly specifies 42 U.S.C. § 1983 as the law establishing liability, however, and the Court does not construe the Complaint as including causes of action not cognizable under 42 U.S.C. § 1983.

FILED AUG 31 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD AUG 31 2001
DEPUTY CLERK

I.

The Minneapolis Police Department received a call on the evening of February 7, 2000, indicating that a Minneapolis grocery store was having some sort of trouble with a customer. The Officers were dispatched to the store in response to that call. When the Officers arrived, they saw Ezeani engaged in a discussion with the store manager, who had accused Ezeani of attempting to steal groceries. The store manager relayed this accusation to the Officers and stated that Ezeani had been arguing with him. The parties dispute what happened when the Officers approached Ezeani to investigate the matter. According to the Officers, Ezeani was loud and argumentative, refused to cooperate, and pulled away when the Officers sought to escort him out of the store. Ezeani, on the other hand, asserts that he was not unruly and that he did not resist or provoke the Officers. It is undisputed that the Officers eventually grabbed Ezeani by the arms and brought him to the ground in such a way that Ezeani's face hit the floor. The impact bloodied Ezeani's mouth and bruised his face. The Officers then handcuffed Ezeani and led him to their squad car. The Officers held Ezeani in the squad car for a period of time, and Ezeani claims that at least one of the Officers taunted Ezeani about Ezeani's national origin. Ezeani had no identification with him, and the policy of the Minneapolis police department is to detain and book a person accused of shoplifting if that person has no identification. The Officers took Ezeani to the Hennepin County Jail, where Ezeani was searched and booked on charges of theft and disorderly conduct. Ezeani was released about ten hours after arriving at the jail.

II.

Ezeani's Complaint names Robert Olson, Minneapolis' Chief of Police, and Jackie Cherryhomes, the President of Minneapolis' City Council, as Defendants. Ezeani has presented no evidence that Olson or Cherryhomes took actions supporting claims against them in anything other than their official capacity. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (holding that suits against public employees are presumed to be against the public employee in his or her official capacity in the absence of an express statement indicating

otherwise). "A suit against a public employee in his or her official capacity is merely a suit against the public employer," id., which in this case is Minneapolis. The Court accordingly will treat the claims against Olson and Cherryhomes as claims against Minneapolis.

Minneapolis may be held liable for the acts of its officials if those officials are implementing or executing "an unconstitutional policy or custom," Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), and Ezeani alleges that his arrest took place as a result of such a policy. The only policy or custom specifically implicated by Ezeani's arrest, however, is Minneapolis' policy of booking accused shoplifters who lack identification. This policy on its face is not inconsistent with the U.S. Constitution. See Atwater v. City of Lago Vista, __ U.S. __, 121 S.Ct. 1536 (2001) (holding that placing a misdemeanor suspect under custodial arrest does not in itself violate the Fourth Amendment). Ezeani has not otherwise shown that Minneapolis, as distinct from its police officers acting in their individual capacities, implemented an unconstitutional policy of any kind during the course of his arrest. The record contains no evidence that Minneapolis adopted or tolerated a policy of using excessive force against arrestees or of targeting individuals based on their racial or national background, as Ezeani suggests. The Court therefore will grant summary judgment on all direct claims against Minneapolis and against employees of Minneapolis acting in their official capacities.

III.

Ezeani's remaining claims are against the Officers in their individual capacities. Both officers assert qualified immunity as a defense to those claims. The U.S. Supreme Court recently clarified that an analysis of qualified immunity involves a two-part inquiry. Saucier v. Katz, __ U.S. __, 121 S.Ct. 2151, 2156 (2001). The Court must consider first whether the facts when viewed in the light most favorable to the plaintiff establish a violation of a constitutional right. Id. If a constitutional violation exists, the Court then must consider whether the constitutional right at issue was clearly established at the time of the defendant's challenged actions. Id. Dismissal is appropriate if the Court finds no constitutional violation or if the Court finds that the defendant violated a constitutional right which was not clearly established at the time of the

defendant's challenged actions.

Ezeani's primary argument is that the Officers used excessive force in arresting him. In making an arrest, police officers may use force that is objectively reasonable in light of all the facts and circumstances facing them. Winters v. Adams, 254 F.3d 758, 765 (8th Cir. 2001). The officers' actual intent or motivation is irrelevant. Id. Although the Officers' subduing and handcuffing of Ezeani may have been unnecessary, at least given Ezeani's version of the facts, those actions were not objectively unreasonable. The information the Officers received from their dispatcher and from the store manager provided probable cause to arrest Ezeani. The Officers had been told that Ezeani caused trouble in the store and argued with the store manager before they arrived, which could have led the Officers to conclude that some force was warranted in making the arrest. Ezeani does not seem to have suffered serious injury as a result of the Officers' actions, and minor injuries suffered incident to an arrest do not indicate an unreasonable use of force. See Edwards v. Giles, 51 F.3d 155, 157 (8th Cir. 1995) (finding no use of excessive force on facts similar to those in this case). Even if the Officers' use of force in subduing an unresisting arrestee was excessive, the Officers nevertheless would be entitled to qualified immunity because the right of an arrestee to be free of such force was not clearly established at the time of Ezeani's arrest. See Saucier, 121 S.Ct. at 2156 (noting that a constitutional right is not clearly established for purposes of qualified immunity if the law at the time of the incident "did not put the officer on notice that his conduct would be clearly unlawful").

Ezeani has shown no other conduct on the part of the Officers that would support a finding of a constitutional violation. The search and seizure of Ezeani's person and property were made incident to an arrest with probable cause. Ezeani's detention in jail was not so lengthy as to constitute an unconstitutional deprivation of liberty. Finally, although a police officer's use of racial epithets in conjunction with unreasonable force against an arrestee may violate the constitution, Maynard v. Hopwood, 105 F.3d 1226, 1228 (8th Cir. 1997), an officer's racial slurs or taunts on the basis of national origin standing alone do not. DeWalt v. Carter, 224

F.3d 607, 612 (7th Cir. 2000); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.), clarified on reh'g, 186 F.3d 633 (5th Cir. 1999). Ezeani therefore has not stated a claim cognizable under 42 U.S.C. § 1983 against the Officers individually.

IV.

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defendants' Motion for Summary Judgment is GRANTED in all respects. All claims against the Defendants in their official and individual capacities are DISMISSED with prejudice.

Dated: August 31, 2001

DONALD D. ALSOP, Senior Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: **AUG 31 2001**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500